### UNITED STATES DISTRICT COURT
### SOUTHERN DISTRICT OF FLORIDA

#### CASE NO.

THE COUNTY OF MONROE, FLORIDA,
individually and on behalf of others similarly situated,

**09-21002**

     Plaintiff,

**CIV-UNGARO**

v.

**MAGISTRATE JUDGE
SIMONTON**

PRICELINE.COM INCORPORATED;
TRAVELWEB LLC; TRAVELOCITY.COM LP;
SITE59.COM, LLC; EXPEDIA, INC;
HOTELS.COM, L.P.; HOTWIRE, INC.;
TRIP NETWORK, INC. d/b/a CHEAP TICKETS;
and ORBITZ, LLC,

     Defendants.

_____/

#### CLASS ACTION COMPLAINT

Plaintiff, THE COUNTY OF MONROE, FLORIDA, alleges as and for its Complaint against Defendants named herein, upon personal knowledge as to itself and its own acts, and as to all other matters upon information and belief, based upon, *inter alia*, the investigation made by its undersigned attorneys, as follows:

#### I. INTRODUCTION

1.    This suit is brought by Plaintiff, The County Of Monroe, Florida ("Monroe County" or the "County"), in its capacity as a taxing authority, against the Defendants, as named herein, for their continuing failure to remit the Tourist Development Taxes imposed under Monroe County Code § 2-297 in the amount "of three (3) percent of each whole and major fraction of each dollar of the total rental charged every person who rents, leases or lets for consideration … accommodations in any hotel, apartment hotel, motel, resort motel, apartment motel, rooming house, tourist or trailer camp or condominium for a term of six (6) months or

less."  In the course of their businesses, Defendants obtain hotel rooms at wholesale rates then resell them to consumers at higher, retail rates.  Although Defendants charge (and collect from) customers the higher retail rate *the Defendants pay taxes only on the lower wholesale rate,* keeping the difference for themselves.

2.      Defendants' acts of tax evasion give rise to the County's claims herein for:  (1) violation of § 2-297 of the Monroe County Code and substantially similar taxing codes, (2) unjust enrichment, and (3) conversion.

3.      The Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §1332(a)(1) because the Plaintiff is a political subdivision of the State of Florida, each of the Defendants are citizens of different States and the amount in controversy exceeds the sum of $75,000, exclusive of interest and costs. Each of the Defendants is subject to personal jurisdiction in this Court because each Defendant, either personally or through an agent, either (1) engages in substantial and not isolated activity within this state; (2) operates, conducts, engages in, or carries on a business or business venture in this state; (3) has committed a tortious act within this state; or (4) has caused injury to persons or property within this state arising out of an act or omission by the Defendant outside this state during a time in which the Defendant was engaged in solicitation or service activities within this state.

## II. JURISDICTION AND VENUE

4.      Venue is proper under 28 U.S.C. §1391 in this court because all or a substantial part of the transactions giving rise to the harms complained of by Plaintiff occurred within Monroe County and this Judicial District.

### III. PARTIES

5.      Plaintiff Monroe County is a political subdivision of the State of Florida and a taxing authority empowered to levy and impose taxes on the exercise of taxable privileges including the Tourist Development Tax authorized under Florida Statute section 125.0104, the "Local Option Tourist Development Act".

6.      Defendants can be grouped into four distinct groups, as direct or indirect subsidiaries of either: A) Priceline; B) Travelocity; C) Expedia, Inc.; or D) Orbitz.

**A.      The Priceline Defendants**

7      Defendant Priceline.com Incorporated ("Priceline.com") is a Delaware corporation with its principal place of business in Norwalk, Connecticut.

8.      Defendant Travelweb LLC. ("Travelweb") is a Delaware corporation with its principal place of business in Dallas, Texas.  Defendant Travelweb is an indirect wholly-owned subsidiary of Defendant Priceline.com.

**B.      The Travelocity Defendants**

9.      Defendant Travelocity.com LP. ("Travelocity.com") is a Delaware limited partnership with its principal place of business in Texas. Travelocity.com is an indirect subsidiary of Sabre Holdings Corporation.

10.      Defendant Site59.com LLC ("Site59.com") is a Delaware limited liability company with its headquarters in New York, New York. Site59.com is an indirect subsidiary of Sabre Holdings Corporation.

**C.      The Expedia Defendants**

11.      Defendant Expedia, Inc. ("Expedia") is a Washington corporation with its principal place of business in Bellevue, Washington.

3

12.     Defendant Hotels.com, L.P. ("Hotels.com") is a Delaware limited partnership with its principal place of business in Dallas, Texas.

13.     Defendant Hotwire, Inc. ("Hotwire") is a Delaware corporation with its principal place of business in San Francisco, California. Expedia is the parent company of Hotwire.

14.     Defendant TravelNow.com, Inc. ("TravelNow.com") is a Delaware corporation, and a wholly-owned subsidiary of Defendant Expedia.

**D.      The Orbitz Defendants**

15.     Defendant Orbitz, LLC ("Orbitz") is a Delaware corporation with its principal place of business in Chicago, Illinois. Orbitz is an indirect subsidiary of Orbitz Worldwide, Inc.

16.     Defendant Trip Network, Inc. (d/b/a CheapTickets) ("CheapTickets") is a Delaware corporation with its principal place of business in Honolulu, Hawaii. CheapTickets is an indirect subsidiary of Orbitz Worldwide, Inc.

## IV. SUBSTANTIVE ALLEGATIONS

17.     As recently as 1997, the concept of an "internet travel company" – an entity organized to effectuate travel plans, reservations and purchases via the world wide web – was virtually unknown.  However, the creation and growth of this industry has been explosive since that time.  By some estimates, more than half of all hotel bookings in the United States are made online, many through internet travel companies owned by the Defendants.  Through their web portals, the Defendants rent hotel rooms to consumers in many different hotels in many large and small cities throughout the country and the world.  These companies offer their services to hotels and consumers along two different business models:  The "Agency Model," and the "Merchant Model."[1]    In the early years of internet travel companies, the Agency Model was the primary

---

[1] The two models are described in the 2002 annual report of Defendant Expedia, Inc. as filed with the Securities and Exchange Commission on Form 10-K on March 31, 2003, and the 2004 Annual Report on Form 10-K as filed with the SEC of IAC/Interactive Corp. (the parent company – at that time – of Expedia.com, Hotwire.com and Hotels.com), p. 9.

method of business but, in recent years, the Merchant Model has grown to represent a majority of total online bookings through the Defendants' internet travel sites.

## A.     The "Agency Model"

18.     Under the Agency Model, the Defendants charge a "service fee" to hotel operators on a transaction basis for booking customers into rooms at a given hotel. Recently, the Defendants have also charged a "booking fee" of approximately $5.00 per transaction directly to the consumers involved. Under the Agency Model, the hotel itself sets the price of its rooms and is the merchant of record for the transaction. The transient visitor pays the hotel directly for the room. The Defendants do not maintain any inventory of rooms, do not set the cancellation policies and do not have any financial responsibility or liability to the transient visitor for dissatisfaction with or mistakes in booking. Defendant Expedia described the Agency Model as follows in its 2002 Annual report:[2]

> Under the agency model, **we act as an agent in the transaction**, passing a customer's reservation to the travel supplier (airline, hotel, car rental company or destination-service provider). We often receive a commission from the travel supplier for our services as an agent. In an agency transaction, **the supplier sets the retail price paid by the customer**, and **the supplier is the merchant of record for the transaction**. (Emphasis added).

19.     Under the Agency Model, the Defendants do not pay any occupancy taxes on the fees they receive from the hotels or from the consumers related to making the hotel reservations.

## B.     The "Merchant Model"

20.     Under the Merchant Model, the Defendants do not function merely as a service provider collecting a fixed transaction fee. Rather, the Merchant Model consists of two independent but related transactions whereby each Defendant: (i) purchases and receives inventories of hotel rooms at negotiated rates from the hotels ("Wholesale" or "Net" rates); and (ii) re-sells the rooms to consumers at rates determined by that particular Defendant ("Retail"

---

[2] 2002 Annual Report of Expedia, Inc. as filed with the Securities and Exchange Commission on Form 10-K on March 31, 2003, p. 4.

rates), keeping the difference as profit.  Each Defendant purchases rooms from the hotel, paying for the rooms at the "Wholesale" rate (and paying hotel taxes based on the "Wholesale" rate) commonly with a credit card belonging to the Defendant.  The transient visitor then purchases the room from the Defendant at the significantly higher "Retail" rate (plus taxes) in a credit card transaction in which the Defendant is the merchant of record.  These merchant transactions were described in public filings by Expedia as follows:

> Under the merchant model, **we receive inventory** (hotel rooms, airline seats, car rentals, destination services) from suppliers at negotiated rates. We determine the retail price paid by the customer and **we then process the transactions as the merchant of record for the transaction**. Acting as a merchant enables us to achieve a higher level of gross profit per transaction compared to the agency model and allows us to provide better prices to customers compared to agency transactions. Merchant transactions comprised 58% of our total revenues in 2002 and are derived from the difference between what we pay for the inventory and what we charge the customer. (Emphasis added).[3]

     21.    Similarly, Priceline.com specifically admits that it actually "purchases" and "takes title" to hotel rooms before reselling them to end users:

> For most of these transactions, we establish the price we will accept, have total discretion in supplier selection, **purchase and take title to the particular product and are the merchant of record**. Consumers agree to hold their offers open for a specified period of time to enable us to fulfill their offers from inventory provided by participating sellers. Once fulfilled, offers generally cannot be canceled. (Emphasis added). [4]

     22.    Hotels.com also identifies itself as a "reseller" of hotel rooms obtained from the hotels:

> We contract with hotels and other lodging properties in advance for volume purchases and guaranteed availability of rooms at wholesale prices **and resell these rooms to consumers** through our websites, third-party affiliated websites and our toll-free call centers. (Emphasis added).[5]

---

[3] 2002 Annual Report of Expedia, Inc. as filed with the SEC on Form 10-K on March 31, 2003.

[4] Priceline.com Annual Report for the year ending Dec. 31, 2002 on Form 10-K as filed with the SEC on March 15, 2003, p. 5.

[5] 2000 Annual Report of Hotel Reservations Network, Inc. (later renamed Hotels.com) filed on Form 10-K with the SEC on April 2, 2001, p.18.

23.    Similarly, Orbitz admits that it "receive[s] inventory directly from a hotel" that it "then mark[s]-up and sell[s] to consumers:"

> Our hotel agreements include . . . merchant hotel contracts with certain hotels, hotel management groups and hotel chains that give us access to discounted negotiated rates **that we then mark-up and sell to consumers on a prepaid basis.**
>
> \*   \*   \*
>
> Our strategy calls for us to increase the number of hotel rooms we can offer under our Orbitz Merchant Hotel program based on merchant arrangements we make directly with individual hotel properties and independent chains. Under the Orbitz Merchant Hotel program, **we receive inventory directly from a hotel at a negotiated rate, and we determine the retail price at which we choose to offer it to the consumer.**
>
> \*   \*   \*
>
> **We must also pay net rates to hotels in the event merchant hotel bookings sold on our website are purchased fraudulently.** (Emphasis added).[6]

24.    Likewise, Travelocity.com also distinguishes its purchase and re-sale transactions under the Merchant Model from those where it merely provides a service:

> In order to increase its sales of higher margin products, Travelocity's business plan calls for it to increase **merchant model sales** pursuant to which **Travelocity serves as the merchant of record in the transaction rather than as a sales agent.** In the merchant business, suppliers make inventory, such as airline seats, hotel rooms, car rentals, cruises, and vacation packages, available to Travelocity at wholesale or "net" rates. The merchant of record then sets the retail price that the customer pays and processes the transaction. **The merchant business generally delivers higher revenue per transaction than comparable sales under the agency model, in which Travelocity acts as an agent in the transaction, passing a customer's reservation to the travel supplier and receiving a commission from the supplier for its services.** (Emphasis added).[7]

---

[6] 2003 Annual Report of Orbitz, Inc. as filed with the SEC on Form 10-K on March 18, 2004, pp. 11, 28, 73.

[7] 2001 Annual Report of Travelocity.com, Inc., as filed with the SEC on March 26, 2002, p.6

25.    As Defendants have admitted in these certified public filings and elsewhere, they rent, lease and let hotel accommodations for consideration, and they charge and collect hotel rental room and tax charges from consumers in connection with each the room rented. As set forth above, Defendants do so by entering into form agreements with hotel chains referred to generically as "merchant agreements" or "net rate agreements".  Under these agreements an "inventory" of hotel rooms is made available to the Defendants for sale by them to their on-line customers. Hotel chains and the Defendants negotiate a confidential wholesale ("net rate") price. Defendants then determine the retail (known variously by the Defendants as "Marked-Up Rate", "Gross Rate", "booking price") price at which the room is offered for purchase by the consumer.

26.    A Defendant may have multiple websites, i.e. orbitz.com, lodgings.com, hotels.com, and a hotel chain may have multiple brands, i.e., Ramada, Super 8, Holiday Inn, and Westin. The merchant agreements use different titles, e.g.:  Orbitz, "Hotel Participation Agreements;" Expedia, "Corporate Property Participation Agreements;" Hilton Hotels agreements with Defendants, "Web Services Agreements;" Travelocity, "Chain Participation Agreements; Hotwire "Merchant Hotel Agreement;" Priceline, "Merchant Hotel Agreement;" but all of the agreements have common characteristics, including:

(a)    "net rates" are negotiated between the Defendants and the hotel chains, which rate is (a) below the rate offered to the public; and, (b) the rate Defendants pay the hotel for the rooms after they are "consumed" by the guest;

(b)    Defendants mark up the "net rate" at their discretion and charge the consumer the higher retail price;

(c)     during the internet transaction between the consumer and the Defendants, the hotel room is booked, the consumer's credit card is charged the retail price, and the reservation is confirmed;

(d)     because these are credit card transactions, Defendants are the "merchants of record" in the transaction and are credited with the retail price by the consumers' bank;

(e)     after the consumer checks out of the room (which may occur days, weeks or months later), Defendants pay the hotel the "net rate" together with a "tax recovery charge" calculated by the Defendants only upon that "net rate," which amounts are then remitted to the hotel by the Defendants.

27.     As part of the internet transaction the consumer is shown the retail price determined by Defendants as the rent charged for the room. Defendants receive the rent charged as merchants of record in the credit card transaction.

28.     Under the uniform conduct employed by Defendants: (a) the hotel "renter" is charged a retail room rate ("the rent charged for the privilege of renting a hotel or motel room") by the Defendants; (b) Defendants charge and receive "the consideration for the rental of such hotel or motel room" from the online consumer by charging his credit card as "merchant of record;" (c) Defendants collect an amount for hotel occupancy taxes from the consumer at the time of booking ("tax recovery charge"); (d) Defendants pay the hotel a net rate plus an amount equal to the hotel occupancy tax on the "net rate" only; and, (e) Plaintiff (and the putative Class) is remitted the tax, not on the retail room price charged to the renter and received by the Defendants, but on the amount calculated upon the lower "net rate" paid by Defendants to the hotel chains.

29.     Defendants all employ the Merchant Model. By using this method of business to acquire room stays in large blocks, Defendants are able to negotiate a lower, "wholesale" purchase or lease price from the hotels. Defendants then re-sell or re-lease the hotel rooms to consumers at a "retail" rate that is substantially higher than the "wholesale" rate Defendants paid to the hotels. This purchase and re-sale "Merchant" business model is far more profitable for the Defendants, and has become the dominant business paradigm in recent years.

30.     Florida Statutes Annotated §125.0104, "Local Option Tourist Development Act" (the "Act"), provides that any county within the State of Florida may levy and impose a tourist development tax on the exercise within its boundaries of the taxable privilege of renting, leasing, or letting for consideration any living quarters or accommodations in any hotel or motel. The tourist development tax is enacted, levied, imposed, and set by the governing board of the county and is calculated as a percentage of the consideration charged for such lease or rental. Under the Act the tourist development tax shall be charged by the person receiving the consideration for the lease or rental, and it shall be collected from the lessee, tenant, or customer at the time of payment of the consideration for such lease or rental. Any person who fails to collect the tourist development tax from any person paying any rental or lease is personally liable for payment of the tax.

31.     Pursuant to F.S.A. §125.0104, Monroe County has enacted a Tourist Development Tax, Section 2-297 of the Monroe County Code (the "Hotel Tax"), which imposes a 3% "tourist development tax" on "each whole and major fraction of each dollar of the total rental charged every person who rents, leases or lets for consideration any living quarters or accommodations in any hotel, apartment hotel, motel, resort motel, apartment motel, rooming house, tourist or trailer camp or condominium for a term of six (6) months or less." The Monroe

County Code further provides that the Hotel Tax is in addition to all other taxes assessed, and that the tax "shall be charged by the person receiving the consideration for the lease or rental, and it shall be collected from the lessee, tenant or customer at the time of payment of the consideration for such lease or rental."

32.    The Defendants all admit through their public filings with the SEC and in their Merchant Agreements with hotels that they do not correctly charge the customer the Hotel Tax based upon the amount charged their customer for the hotel room, but rather calculate and remit a lower amount determined from the "net rate" that the Defendants themselves pay the hotels, thereby denying Monroe County and other similar Florida Counties the Hotel Taxes to which they are entitled.

## V.  CLASS ACTION ALLEGATIONS

33.    "This action is brought as a class action pursuant to Rule 23 (a) and 23 (b)(3) of the Federal Rules of Civil Procedure, on behalf of a Class consisting of Monroe County and all other counties within the State of Florida that have enacted a Hotel Tax pursuant to F.S.A. §125.0104 on the taxable privilege of renting, leasing, or letting for consideration living quarters or accommodations in any hotel or motel .

34.    This class consists of and is defined as:

> "All counties within the State of Florida that: 1) enacted a tourist development tax under authority of F.S.A §125.0104; and 2) have not received the tax due on the amount received by the Defendants as consideration for the rooms rented by them located within those counties.

35.    This action is properly maintainable as a class action for the following reasons:

(a)    The Class is so numerous that joinder of all members is impracticable, and the members of the class will be easily ascertained through Defendants' records with additional discovery;

(b)    There are common questions of law and fact involved herein that predominate over any questions affecting only individual members of the Class. These common questions of law and fact include:

(i)    Whether Defendants are persons receiving the consideration for the lease or rental of hotel rooms located within counties in the State of Florida that have enacted a Hotel Tax;

(ii)   Whether Defendants collect the Hotel Tax from those renting hotel rooms located within counties in the State of Florida that have enacted the Hotel tax;

(iii)  Whether Defendants collect the Hotel Tax based upon the amount they receive as consideration for the lease or rental of hotel rooms located within counties in the State of Florida that have enacted the Hotel Tax;

(iv)   Whether Defendants remitted the correct amount of Hotel Tax for the rental of hotel rooms located within counties in the State of Florida that have enacted the Hotel Tax; and

(v)    Whether the Defendants owe any Hotel Taxes to counties in the State of Florida that have enacted the Hotel Tax.

(c)    The County's claims are typical of the claims of the other members of the Class. The damages suffered by the County and all other Class members arise from, and were caused by, the same violations and course of conduct. The County does not have interests antagonistic to, or in conflict with, the Class;

(d)    The County will fairly and adequately protect the interests of the members of the Class and have retained competent counsel experienced in class action litigation to vigorously prosecute this action;

(e)    A class action is superior to other available methods for the fair and efficient adjudication of this controversy. The County knows of no difficulty to be encountered in the management of this action that would preclude its maintenance as a class action. Furthermore, since the damages suffered by some individual members of the Class may be relatively small, the expense and burden of individual litigation make it

impracticable for the members of the Class to seek redress individually for the wrongs they have suffered; and

(f)     Notice can easily be provided to Class members via first class mail or other techniques and forms of notice similar to those customarily used in class action lawsuits.

## VI. CAUSES OF ACTION

### COUNT I
### (Violation of § 2-297 of the Monroe County Code)

36.     The County repeats and realleges the allegations set forth in Paragraphs 1 through 35, *supra*, as if fully set forth herein.

37.     The County, (like the other members of the proposed class herein), is a tax authority empowered to levy and collect Hotel Taxes pursuant to law.

38.     Defendants rented, lease, and let hotel accommodations for consideration which accommodations are located within the County, and the Counties represented by the other members of the proposed class herein.  Defendants have received consideration and Hotel Tax charges from consumers to whom they have rented rooms but have failed to remit to the County, and other members of the proposed class, the amounts due and owing to the County, and other members of the proposed class, pursuant to Monroe County Code § 2-297 and the respective similar Hotel Tax ordinances enacted by the other members of the proposed class herein.

39.     Failure to convey these taxes to the County, and other members of the proposed class, has generated a debt owed by Defendants to the County, and other members of the proposed class, which is hereby sought to be recovered pursuant to the County's legal collection authority.  The County, and other members of the proposed class,  is/are further entitled to

penalties, costs and/or interest owed as a result of Defendants' failures to remit appropriate tax sums, in accordance with Monroe County Code § 2-298 and otherwise.

40.     The precise amount of all recoverable damages, penalties and/or interest will be determined at time of trial.

## COUNT II
### (Conversion)

41.     The County repeats and realleges the allegations set forth in Paragraphs 1 through 35, *supra,* as if fully set forth herein.

42.     At all times relevant hereto, funds which were the legal property of the County, and other members of the proposed class, were in the possession and under the control of Defendants.   Defendants, through the conduct alleged herein, intentionally and wrongfully deprived the County, and other members of the proposed class, of tax revenue due and owing to the County, and other members of the proposed class, under the Monroe County Code, § 2-297 et seq. and the respective similar Hotel Tax ordinances enacted by the other members of the proposed class herein.

43.     As a direct and proximate result of Defendants' conduct, the County and other members of the proposed class have suffered, and will continue to suffer, damages in an amount to be determined at time of trial.

## COUNT III
### (Unjust Enrichment)

44.     The County repeats and realleges the allegations set forth in Paragraphs 1 through 35, *supra*, as if fully set forth herein.

45.     As a result of their conduct alleged herein, Defendants have unjustly received and retained a benefit to the detriment of the County, and other members of the proposed class.

14

Defendants are required to collect the Hotel Tax on behalf of the County, and other members of the proposed class, and in fact collect that tax from customers. Defendants, however, improperly retain a portion of the tax owing to the County, and other members of the proposed class. Defendants' retention of this tax violates fundamental principles of justice, equity, and good conscience. The specific sums of money unlawfully received and retained by Defendants, and other members of the proposed class is/are identifiable from information and records in their possession or control.

46.     The County, and other members of the proposed class, is/are therefore entitled to the return of all such amounts owed them, plus any interest and other amounts provided for by law or equity on said amounts from the date the tax monies were required to have been remitted to the County and other members of the proposed class.

## COUNT IV
### (Injunctive Relief)

47.     The County repeats and realleges the allegations set forth in Paragraphs 1 through 35, *supra*, as if fully set forth herein.

48.     Defendants have failed to properly pay taxes and assessments to the County and the other members of the proposed class.

49.     As set forth in Counts I, II, or III, Defendants have violated one or more cognizable legal rights of the County and the other members of the proposed class.

50.     Defendants continue to retain monies due and owing the County and the other members of the proposed class as a result of Defendants' failure to pay taxes to the County and the other members of the proposed class that are due and owing.

51.     The County and the other members of the proposed class have no adequate remedy at law by virtue of Defendants' course of conduct.

52.     Irreparable injury will be suffered unless a permanent injunction issue to present Defendants from continuing to obtain hotel rooms at wholesale rates then resell them to consumers at higher, retail rates and fail to pay the County and the other members of the proposed class taxes that are due and owing.

**Prayer for Relief**

WHEREFORE, the County, individually and on behalf of the proposed Class, prays for an Order of this Honorable Court as follows:

A.     Finding that this action satisfies the prerequisites for maintenance as a class action set forth in Rule 23, Fed.R.Civ.P. and certifying the Class as proposed herein;

B.     Designating the County as representative of the Class and its counsel as Class Counsel;

C.     Entering judgment in favor of the County and the other members of the proposed class and against Defendants for: (i) violations of Monroe County Code § 2-297 *et seq.* and the respective similar Hotel Tax ordinances enacted by the other members of the proposed class herein; (ii) conversion; and (iii) unjust enrichment; and injunctive relief.

D.     Awarding the County and the other members of the proposed class their full damages, inclusive of all tax amounts owed, all applicable penalties, pre-judgment and post-judgment interest to the extent provided by law, costs of suit and reasonable attorneys' fees;

E.   Granting permanent injunctive relief to enjoin future violations by Defendants.

G.   Providing for trial by jury on all issues so triable by right; and

H.   Granting such further relief as the Court deems just and proper.

DATED: April 15, 2009.                    By: _____
                                          Jay B. Shapiro (FBN 766361)
                                          **STEARNS WEAVER MILLER WEISSLER
                                          ALHADEFF & SITTERSON, P.A.**
                                          150 West Flagler Street
                                          Suite 2200 – Museum Tower
                                          Miami, FL 33130
                                          Telephone: (305) 789-3200

                                          Tod Aronovitz (FBN 186430)
                                          **ARONOVITZ LAW**
                                          777 Brickell Avenue, Suite 850
                                          Miami, FL 33131
                                          Telephone:    (305) 372-2772

                                          Paul M. Weiss
                                          Michael J. Lotus
                                          **FREED & WEISS LLC**
                                          111 West Washington Street, Suite 1331
                                          Chicago, IL 60602
                                          Telephone:    (312) 220-0000

                                          Richard J. Burke
                                          **RICHARD J. BURKE LLC**
                                          1010 Market Street, Suite 660
                                          St. Louis, MO 63101
                                          Telephone:    (314) 880-7000

                                          James E. Cecchi
                                          **CARELLA, BYRNE, BAIN, GILFILLAN, CECCHI,
                                          STEWART & OLSTEIN**
                                          5 Becker Farm Rd.
                                          Roseland, NJ 07068
                                          Telephone:    (973) 994-1700

                                          **Counsel for Plaintiff Monroe County
                                          and Putative Class**

17

# CIVIL COVER SHEET

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM).

## I.(a) PLAINTIFFS

THE COUNTY OF MONROE, FLORIDA, individually and on behalf of others similarly situated,

## DEFENDANTS

PRICELINE.COM INCORPORATED; TRAVELWEB LLC; TRAVELOCITY.COM LP; SITE59.COM, LLC; EXPEDIA, INC.; HOTELS.COM, L.P.; HOTWIRE, INC.; TRIP NETWORK, INC. d/b/a CHEAP TICKETS; and ORBITZ, LLC,

**(b)** COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF: Miami-Dade
(EXCEPT IN U.S. PLAINTIFF CASES)

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT: Miami-Dade
(IN U.S. PLAINTIFF CASES ONLY)
NOTE:   IN LAND OF CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED

**(c)** ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)

Jay B. Shapiro
Stearns Weaver Miller, et al
150 West Flagler Street, Suite 2200
(305) 789-3200

ATTORNEYS (IF KNOWN)

**(d)** CIRCLE COUNTY WHERE ACTION AROSE:

(DADE), MONROE, BROWARD, PALM BEACH, MARTIN, ST. LUCIE, INDIAN RIVER, OKEECHOBEE, HIGHLANDS

## II. BASIS OF JURISDICTION (PLACE AN x IN ONE BOX ONLY)

☐ 1 U.S. Government Plaintiff
■ 3 Federal Question (U.S. Government Not a Party)
☐ 2 U.S. Government Defendant
☑ 4 Diversity (Indicate Citizenship of Parties in Item III)

Dade 09cv21002 - V     / o ___

## III. CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN x IN ONE BOX ONLY)
(For Diversity Cases Only) FOR PLAINTIFF AND ONE BOX FOR DEFENDANT

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☑1 | ☐1 | Incorporated or Principal Place of Business in This State | ☐4 | ☐4 |
| Citizen of Another State | ☐2 | ☑2 | Incorporated and Principal Place of Business in Another State | ☐5 | ☑5 |
| Citizen or Subject of a Foreign Country | ☐3 | ☐3 | Foreign Nation | ☐6 | ☐6 |

## IV. CAUSE OF ACTION (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE  DO NOT CITE JURISDICTIONAL STATUTES UNLESS DIVERSITY).

**IVa.**  _5_  days estimated (for both sides) to try entire case.

## V. NATURE OF SUITE (PLACE AN x IN ONE BOX ONLY)

| A. CONTRACT | A. TORTS | | B. FORFEITURE / PENALTY | A. BANKRUPTCY | A. OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | PERSONAL INJURY | PERSONAL INJURY | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury – Med Malpractice | ☐ 620 Other Food & Drug | | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 423 Withdrawal 28 USC 157 | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 365 Personal Injury – Product Liability | ☐ 630 Liquor Laws | | B ☐ 450 Commerce / ICC Rates / etc. |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 640 R.R & Truck | A. PROPERTY RIGHTS | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | | ☐ 650 Airline Regs | ☐ 820 Copyrights | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| B ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | PERSONAL PROPERTY | ☐ 660 Occupational Safety / Health | ☐ 830 Patent | ☐ 810 Selective Service |
| B ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | ☐ 690 Other | ☐ 840 Trademark | ☐ 850 Securities / Commodities / Exchange |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 371 Truth in Lending | A. LABOR | B. SOCIAL SECURITY | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 380 Other Personal Property Damage | ☐ 710 Fair Labor Standards Act | ☐ 861 MIA (13958) | ☐ 891 Agricultural Acts |
| ☐ 195 Contract Product Liability | | ☐ 385 Property Damage Product Liability | B ☐ 720 Labor / Mgmt. Relations | ☐ 862 Black Lung (923) | ☐ 892 Economic Stabilization Act |
| A. REAL PROPERTY | A. CIVIL RIGHTS | B. PRISONER PETITIONS | B ☐ 730 Labor / Mgmt. Reporting & Disclosure Act | ☐ 863 DIWC / DIWW (405g) | ☐ 893 Environmental Matters |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence | ☐ 740 Railway Labor Act | ☐ 864 SSID Title XVI | ☐ 894 Energy Allocation Act |
| B ☐ 220 Foreclosure | ☐ 442 Employment | 790 Other Labor Litigation | ☐ 865 RSI (405(g)) | ☐ 895 Freedom of Information Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing / Accommodation | Habeas Corpus | ☐ 791 Empl. Ret. Inc. Security Act | A. FEDERAL TAX SUITS | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 530 General | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ✓ 890 Other Statutory Actions *A or B |
| ☐ 245 Tort Product Liability | ☐ 440 Other Civil Rights | ☐ 535 Death Penalty | | ☐ 871 IRS - Third Party 26 USC 7609 | |
| ☐ 290 All Other Real Property | | * ☐ 540 Mandamus & Other ☐ 550 Civil Rights * A or B | | | |

## VI. ORIGIN (PLACE AN x IN ONE BOX ONLY)

☐ 1 Original Proceeding
■ 2 Removed from State Court
☐ 3 Remanded from Appellate Court
☐ 4 Refiled
☐ 5 Transferred from another district (specify)
☐ 6 Multidistrict Litigation
☐ Appeal to District Judge from Magistrate Judgment

## VII. REQUESTED IN COMPLAINT:

CHECK IF THIS IS A **CLASS ACTION** DEMAND $
☐ UNDER F.R.C.P. 23

Check YES only if demanded in complaint:
JURY DEMAND: ☐ YES  ☐ NO

## VIII. RELATED CASE(S) IF ANY (See instructions):

HUCK
JUDGE  MOORE   DOCKET NUMBER  06-21878-CIV-HUCK / 09-10004-CIV-MOORE

DATE  c/15/09

SIGNATURE OF ATTORNEY OF RECORD

UNITED STATES DISTRICT COURT
S/F    I-2
REV. 6/90

FOR OFFICE USE ONLY:  Receipt No.: 099166  Amount: 350
Date Paid: 04 15 09  M/ifp: